STATE of Missouri, Respondent,

v.

Terrance J. JONES, Sr., Appellant.

No. 75866.

Supreme Court of Missouri,
En Banc.

Oct. 26, 1993.

Rosalynn Koch, R. Cristine Stallings, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

THOMAS, Judge.

Terrance Jones, who had previously been convicted of robbery in Missouri and Kansas, was convicted by a jury of unlawful possession of a concealable firearm in violation of section 571.070, RSMo 1986, which prohibits possession of a concealable firearm by any person who has been convicted of or confined for a dangerous felony during the five year period immediately preceding the date of such possession. The trial court found Jones to be a prior, persistent, and class X offender under section 558.019, RSMo Supp.1992, and sentenced him to a term of fifteen years imprisonment as per section 558.016, RSMo Supp.1992. Jones appealed to the Missouri Court of Appeals, Western District. Following opinion, the court of appeals transferred the case to this Court for the purpose of reexamining the existing law. Rule 83.02. We reverse and remand to the trial court for a new trial consistent with this opinion.

## I.

On January 18, 1991, Missouri State Highway Patrol Trooper Richard Fletcher pulled Jones over because one of the headlights on the car Jones was driving was not working. During the stop, Trooper Fletcher noticed that the inspection sticker on the car was expired and that the renewal stickers on the license plates did not match. The trooper had Jones accompany him to the patrol car, and the trooper ran a check on the license plates.

The check revealed that the license plates were expired, that the car belonged to Myrna Jones, and that the renewal stickers had been issued for two different automobiles belonging to a Ms. Frazer. Jones indicated that Myrna Jones was his sister, but that he was the principal driver. Jones also told the trooper that he had been convicted of robbery in Missouri and Kansas.

Trooper Fletcher called his supervisor to the scene. They decided to have the car impounded and to take Jones in to post bond pending resolution of the ownership of the renewal stickers. While waiting for the tow truck to arrive, Trooper Fletcher began an inventory of the contents of the car pursuant to Highway Patrol procedures. An inventory search is a search that is conducted for the purposes of protecting the owner's property while it is in police custody; guarding against claims of lost, stolen, or damaged property; and protecting the police from possible danger. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

In the passenger compartment, Fletcher found ten rounds of .38 special ammunition in a bag under the front seat and a television in the back seat. In the trunk, Fletcher found

a VCR, a stereo, a radar detector, some blueprints, and a loaded, holstered .38 special revolver under a blanket. A computer check indicated that the VCR and revolver were stolen. Jones was then handcuffed and issued a *Miranda* warning. Jones was charged with receiving stolen property and unlawful possession of a concealable weapon. The first charge was resolved when the trial court sustained Jones' motion for judgment of acquittal at the close of the prosecution's case.

## II.

■ Jones' first point on appeal is that the trial court erred in denying a motion to suppress and in allowing the revolver to be received in evidence over objection because it was obtained through an invalid search. When reviewing the denial of a motion to suppress, we look at the evidence in the light most favorable to the state. *See State v. Hunter,* 783 S.W.2d 493, 494 (Mo.App.1990).

■ The Fourth Amendment's protection from unreasonable search and seizure is identical to the protection under Mo. Const. Art. I, § 15. *State v. McCrary,* 621 S.W.2d 266, 273 (Mo. banc 1981). "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741. An inventory search does not implicate the policies requiring a warrant or probable cause. *Id.* An inventory search is valid where reasonable police regulations for inventory procedures are administered in good faith. *Id.* at 374, 107 S.Ct. at 740–41.

■ In the present case, there is no allegation that Trooper Fletcher conducted the inventory search in bad faith. He also followed Missouri State Highway Patrol procedures. Patrol procedures for the inventory of towed vehicles state that "[i]f the driver, owner, or person in charge of the vehicle is present when the wrecker driver arrives and is competent and sober and is not under physical arrest, no inventory will be required." Trooper Fletcher testified that the decision to tow the vehicle and to take Jones in to post bond for the mismatched renewal stickers had been made before the inventory search. The trooper and his supervisor, who was at the scene, each testified that Jones was under arrest prior to the inventory search. The officers could not state unequivocally that they had informed Jones that he was under arrest. However, "an arrest can be accomplished without a formal declaration of such." *Day v. Wells Fargo Guard Service Co.,* 711 S.W.2d 503, 505 (Mo. banc 1986). The arresting officer is not required to make a formal declaration to the arrestee that the arrestee is under arrest. *Id.* Jones was under arrest, and under these circumstances, procedure required that an inventory be done. The revolver was found in the course of this valid inventory search, and its admission into evidence was appropriate.

The trial court's rulings in this area were proper and supported by sufficient evidence. Point one is denied.

## III.

■ We next address Jones' contention in his third point that the trial court erred in denying the motion to suppress and overruling his objection to the introduction of the revolver into evidence because his right to be secure from unreasonable search and seizure was violated in that his detention by Trooper Fletcher went beyond the scope of the traffic stop. This issue was not included in the motion to suppress or in any other motion or objection at trial. Consistent with having ignored it throughout the trial, it was not raised in the motion for new trial. It was first raised in the appellant's brief before the appellate court; it is not properly preserved for review on appeal. *See, e.g., State v. Hutton,* 825 S.W.2d 883, 888 (Mo.App.1992).

Nevertheless, this point is without merit. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Trooper Fletcher initially detained Jones because a headlight was not working. During this detention, the trooper noticed that the inspection sticker was expired. This discovery and the determination that the license plates were expired justified a further detention. The mismatched renewal stickers, the finding

that they were issued for automobiles belonging to someone else, and the reasonable inference that the stickers were stolen supported the requirement that Jones be taken in to post bond. This requirement led to the inventory search and the discovery of the revolver.

The circumstances and the string of discoveries justified the detention of Jones. The detention was reasonable. This point is denied.

### IV.

■ Finally, we address Jones' second point that the trial court erred in submitting the case to the jury under a verdict director that did not require any finding of a culpable mental state and thus failed to instruct the jury on all of the elements of the offense charged. The instruction complained of, Instruction No. 6, was patterned on MAI–CR 3d 331.28 and reads:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 18, 1991, in the County of Clay, State of Missouri, the defendant had in his possession a 8 caliber snubnose revolver, a concealable firearm, and

Second, that in July, 1989, the defendant was confined for having committed the crime of aggravated robbery,

then you will find the defendant guilty of unlawful possession of a concealable firearm.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "concealable firearm" means any firearm with a barrel of less than 16 inches in length, measured from the face of the bolt or standing breech.

If you do find the defendant guilty of unlawful possession of a concealable firearm you will return a verdict finding him guilty of unlawful possession of a concealable firearm.

Nowhere in the instruction is there a requirement for a finding of a culpable mental state, nor is "possession" defined. The Notes on Use for MAI–CR 331.28 do not specify that possession is to be defined. However, MAI–CR 333.00 contains the following definition:

**Possess or possessed.**

Means having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if he has the object on his person or within easy reach and convenient control. A person has constructive possession if he has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint. [§ 556.-061(22), RSMo Supp.1991]

MAI–CR 3d 333.00.

■ Section 562.021.2, in effect at the time of the offense, stated: "Except as provided in section 562.026 if the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient." § 562.021.2, RSMo 1986 (repealed 1993). Section 562.026(2) states in part: "A culpable mental state is not required ... (2) If the statute defining the offense clearly indicates a purpose to dispense with the requirement of any culpable mental state as to a specific element of the offense." § 562.-026(2), RSMo 1986. Mere lack of an affirmative statement in the statute requiring a culpable mental state will not support a finding that no mental state is required. *See State v. Green,* 629 S.W.2d 326, 329 (Mo. banc 1982).

■ The unlawful possession of a concealable weapon statute states that one who has been *convicted of a dangerous felony* commits the crime "if he has any concealable firearm in his possession." § 571.070.1, RSMo 1986. The statute makes no reference to a culpable mental state. Therefore, applying the rule stated in *Green,* a culpable men-

tal state beyond criminal negligence is required.

"A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act." § 562.011.1, RSMo 1986. "Possession is a voluntary act if the possessor knowingly procures or receives the thing possessed, or having acquired control for a sufficient time to have enabled him to dispose of it or terminate his control." § 562.011.3, RSMo 1986.

There has been no finding that Jones knew the revolver was in the trunk. Jones had access to the car and there was ammunition in a bag under the seat, but he told the trooper that his brother occasionally used the car. His sister, Myrna Jones, testified that she had used the car to move and had placed items in the trunk. His girlfriend testified that she used the car frequently, that she had found the revolver, that she placed it under the blanket in the trunk, and that she had told no one.

This testimony could be disbelieved, but Instruction No. 6 did not require a finding that Jones knew of the presence of the revolver, an element of the crime. "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988). Therefore, submitting Instruction No. 6 was prejudicial error.

■ Jones offered an alternative instruction that included a definition of possession. This definition included a knowledge requirement. Moreover, in his closing argument, the prosecutor stated that "[n]owhere in the instruction does it say he knew the gun was in the trunk." We reverse the conviction and remand to the trial court for a new trial. When MAI–CR 331.28 is used, "possession" must be defined. The definition shown in MAI–CR 333.00, or such portion as is appropriate under the evidence, should be used. This definition also adds the required culpable mental state. We hereby refer the matter of the necessary changes to MAI–CR 331.28 and the Notes on Use to the MAI–CR committee.

## V.

The state relies on a line of cases beginning with *State v. Bean,* 720 S.W.2d 21 (Mo. App.1986), in arguing that Instruction No. 6 was proper. *Bean* relied on the lack of any reference to a requirement of a culpable mental state in the unlawful possession of a concealable firearm statute to conclude that it was not necessary to prove a culpable mental state in a prosecution under the statute. *Id.* at 22. *Bean* has been followed by *State v. Wishom,* 725 S.W.2d 627 (Mo.App. 1988), and *State v. Mosby,* 755 S.W.2d 614 (Mo.App.1988). These cases are in direct conflict with *Green.* To the extent *Bean* and its progeny are contrary to our opinion, they are overruled.

## VI.

We reverse the judgment based on the final point that no requirement of a finding of a culpable mental state was included in the instruction. We remand to the trial court for a new trial consistent with this opinion.

All concur.